1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT
10          FOR THE EASTERN DISTRICT OF CALIFORNIA
11
12   ERIC DEAN,
13                                              No. 2:07-cv-01531-MMM
14                    Petitioner,
15
16          vs.
17
18   THOMAS CAREY, Warden, et al.,
19                                              ORDER GRANTING
20                    Respondents.              PETITION FOR WRIT OF
21                                              HABEAS CORPUS
22
23
24
25          Eric Dean is a California state prisoner, serving an indeterminate seventeen-

26   years-to-life sentence for second-degree murder with a firearm enhancement.

27   Dean filed pro se a 28 U.S.C. § 2254 habeas petition challenging on due process

28   grounds the denial of parole in 2004 by the Board of Prison Terms (the "Board")

29   at his sixth parole hearing.  Upon review of the parties' arguments and the record,

30   the Court finds that the Board's denial of parole was an unreasonable application

31   of California's "some evidence" of current dangerousness standard.  See Hayward

32   v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc).  Therefore, the court

1  GRANTS the petition.

2  **BACKGROUND**

3  In 1987, Dean was convicted of second-degree murder and use of a firearm

4  and received a sentence of seventeen years to life in prison. Pet. at 1. The

5  commitment offense occurred on September 4, 1986. Dean, the victim and a male

6  and female witness were at a residence in San Francisco. Pet. Ex. 1 at 11. Dean

7  had just met the victim, and they all had been drinking. Id. at 16. Dean

8  remembered drinking a fifth-gallon of hard liquor. Id. at 19. Earlier in the day,

9  Dean had used cocaine, although he stated he did not feel the effects of it at the

10  time of the offense. Id. at 18-19. Dean became involved in a verbal dispute with

11  the victim. Dean then stated, "I'm going home to get my shit," and left. Id. at 11.

12  He returned about five minutes later, drew a gun from his rear waistband, and said

13  to the victim, "Why do you do me like that?" Id. The argument continued, but the

14  male witness talked Dean into putting the gun back into his waistband. Id. A few

15  moments later, the argument started back up. Dean drew the gun again and shot

16  the victim once, at short range in the abdominal area. Dean then left the residence

17  and the male witness called the police. Id. The police found the victim lying on

18  the floor suffering from the gunshot wound and unconscious. Id. He was brought

19  to the hospital and later declared dead. Id. The following day, on September 5,

1   Dean's father called the police and informed them that Dean wished to turn

2   himself in. Id. at 11-12. Dean's father took the police to a restaurant where Dean

3   was waiting, and Dean was arrested. Id. at 12.

4         The Board held Dean's sixth parole hearing in December 2004. The Board

5   denied parole for one year, concluding that Dean was "not yet suitable for parole

6   and would pose an unreasonable risk of danger to society or a threat to public

7   safety if released from prison." Id. at 51. The Board found that the commitment

8   offense was carried out in an "extremely callous manner"; that Dean had a "record

9   of assaultive behavior" and had "failed to profit from society's previous attempt to

10   correct [his] criminality"; that Dean did not have an unstable social history, but

11   had started drinking as an adolescent and had experimented with drugs; that Dean

12   had been discipline report-free since 1997, but that the Board considered that

13   record a recent gain; and that Dean had not continued in a vocation to get a

14   certification besides silk screeening. Id. at 51-55.

15         On the positive side, the Board commented that Dean had a stable social

16   history and good family support; that there was no opposition from law

17   enforcement or the next of kin of the victim; that his psychological reports were

18   favorable; that his parole plans were good, although his employment plans were

19   not fully set; and that Dean had been involved in multiple self-help programs. Id.

1    at 53-54.  The Board concluded: "During that [one-year denial] we ask that you

2    remain disciplinary free and continue to participate in self-help.  And I would

3    make every effort . . . to get back into a vocation and try to get a certification . . .

4    Since '97 you've been doing a good program and been involved in self-help, and

5    just stay on the right track."  Id. at 54-55.

6            Dean filed a state habeas petition challenging his parole denial in San

7    Francisco Superior Court.  The Superior Court denied the petition on July 14,

8    2005, finding that the Board did not act arbitrarily or capriciously or fail to

9    consider all the relevant factors.  Pet. Ex. 5 at 2.  The California Court of Appeal

10   summarily denied Dean's petition on November 17, 2005, Pet. Ex. 6, and the

11   California Supreme Court summarily denied his petition on May 7, 2006, Pet. Ex.

12   7.  Dean filed his § 2254 federal petition for writ of habeas corpus on July 27,

13   2007.  Pet. at 1.

14                              **STANDARD OF REVIEW**

15           Under the look-through doctrine, the California Supreme Court's summary

16   denial is presumed to rest on the same grounds as the Superior Court's decision.

17   See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).  Dean is in custody

18   pursuant to a state court adjudication and filed his federal habeas petition after the

19   effective date of AEDPA.  Pet. at 1; see 28 U.S.C. § 2254.  Under AEDPA, a

1    district court can only grant a writ of habeas corpus if the state court's decision

2    affirming the denial of parole was "contrary to, or involved an unreasonable

3    application of, clearly established Federal law" or was "based on an unreasonable

4    determination of the facts in light of the evidence presented." 28 U.S.C.

5    § 2254(d); see also Hayward, 603 F.3d at 563.

6        The "unreasonable application" standard is "highly deferential," Lindh v.

7    Murphy, 521 U.S. 320, 333 n.7 (1997), requiring that the writ issue only where the

8    state court's application of federal law was "objectively unreasonable," and not

9    merely incorrect. Williams, 529 U.S. at 409-11. In addition, the reviewing court

10    may overturn a state court decision on factual grounds only where the court made

11    "an unreasonable determination of the facts in light of the evidence presented in

12    the State court proceeding." 28 U.S.C. § 2254(d)(2).

13                                 **ANALYSIS**

14    **I.    HAYWARD V. MARSHALL**

15        Dean argues that the Board's finding that he was unsuitable for parole is

16    unsupported by the evidence and thus violates his due process rights. In Hayward

17    v. Marshall, the Ninth Circuit recently established the framework for federal

18    review of California state parole decisions. 603 F.3d at 562-63. The court held

19    that "in the absence of state law establishing otherwise, there is no federal

5

1   constitutional requirement that parole be granted in the absence of 'some

2   evidence' of future dangerousness or anything else." Id. at 561.

3          However, the court invoked two decisions by the California Supreme

4   Court—In re Lawrence, 190 P.3d 535 (Cal. 2008) and In re Shaputis, 190 P.3d

5   573 (Cal. 2008)—holding, as a matter of state constitutional law, that "'some

6   evidence' of future dangerousness is required for a denial of parole in California."

7   Hayward, 603 F.3d at 562.  As the court in In re Lawrence, explained, the relevant

8   inquiry for courts reviewing a Board's denial of parole is whether there is "some

9   evidence" to support the Board's decision that the petitioner "constitutes a *current*

10  threat to public safety" rather than just some evidence to "confirm the existence of

11  . . . [the Boards] factual findings."  190 P.3d 535, 553 (Cal. 2008) (emphasis

12  added).

13         The task for district courts adjudicating the federal habeas claims of

14  California inmates is to "decide whether the California judicial decision approving

15  the [parole denial] was an 'unreasonable application' of the California 'some

16  evidence' requirement, or was 'based on an unreasonable determination of the

17  facts in light of the evidence.'" 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1) &

18  (d)(2)).  Accordingly, the following analysis considers, under Hayward, whether

19  the Superior Court decision constituted an unreasonable application of the "some

6

1    evidence" rule.

2    II.    APPLICATION OF CALIFORNIA'S "SOME EVIDENCE" REQUIREMENT
3
4           The Superior Court stated that the Board "found Petitioner to be an

5    unreasonable threat to public safety," and identified six grounds on which it

6    considered the Board had based its denial.  Pet. Ex. 5 at 1.

7           The Board based the decision on its findings that: 1) the offense was
8           carried out in a cruel and callous manner, 2) Petitioner has a record of
9           criminality including juvenile camp, juvenile probation, county jail
10          and adult probation, 3) Petitioner has failed to profit from society's
11          previous attempts to correct his criminality, 4) Petitioner's social
12          history is not unstable, but Petitioner began drinking alcohol at a
13          young age, 5) Petitioner experimented with marijuana and cocaine,
14          and 6) Petitioner has failed to continue in a vocation to enhance his
15          skills."
16   Id..

17          Boiled down, the parole factors the Superior Court identified are (1) the

18   nature of the commitment offense; (2) a history of recidivist criminal behavior; (3)

19   substance abuse problems[1]; and (4) inadequate vocational training.  The Superior

20   Court's analysis of the Board's suitability decision stated, in full:

21          Here, there is no evidence that the Board acted arbitrarily and

---

[1]The Board appears to relate the substance abuse problems to the stability of
social history factor, 15 Cal. Code Regs. tit. 15§ 2402(c)(3), although that
construct does not fit for Dean's situation, in which the Board acknowledged Dean
demonstrated stable social history.  Dean's substance abuse history could be
considered, instead, as related to the psychological factors category, § 2402(c)(5),
or as a general circumstance the Board considered regarding suitability, § 2402(b).

1   capriciously, or otherwise failed to consider all the relevant factors.
2   Although the Board ultimately decided to deny parole, the hearing
3   transcript show that it only did so after considering numerous factors,
4   including many in Petitioner's favor.  Consequently, because it duly
5   weighed other consistent and competing factors, the Board did not act
6   improperly by basing its ruling, at least in part, on the gravity of the
7   commitment offense.
8
9   Id. at 2 (citing In re Ramirez, 94 Cal.App.4th 549, 569 (Cal. Ct. App. 2001)).

10          The Superior Court did not articulate the correct standard—that the Board's

11   denial must rest on "some evidence" of current dangerousness—but instead rested

12   on the standard that the Board must weigh all of the relevant factors and not

13   demonstrate arbitrary or capricious decision-making.  Because the Superior

14   Court's 2005 decision was prior to the California Supreme Court's more detailed

15   articulation of the "some evidence" standard as related to dangerousness, it is

16   perhaps understandable why the court adopted a general standard of arbitrary and

17   capricious.  Notably, however, in its response to Dean's habeas petition, the state

18   does not argue that there is any evidence of current dangerousness nor does it

19   attempt to ground its opposition on that basis.

20          When a state court applies the incorrect legal standard, the "contrary to"

21   requirement of § 2254(d)(1) of AEDPA is satisfied.  The habeas court then

22   undertakes de novo review using the correct legal standard.  Cooperweld v.

23   Cambra, 245 F.3d 1042, 1046 (9th Cir. 2001) (applying de novo review "when a

1    state court employs the wrong legal standard, [because] the AEDPA rule of

2    deference does not apply).  Thus, this court reviews the totality of the Superior

3    Court's decision and the underlying Board decision to see whether, nonetheless,

4    "some evidence" of current dangerousness supported the Board's parole denial

5    and the Superior Court decision affirming it.

6    **A.    Nature of the commitment offense**

7            The first finding the Superior Court identified as supporting the Board's

8    denial of parole was that Dean's "offense was carried out in a cruel and callous

9    manner."  <u>See</u> 15 Cal. Code Regs. tit. 15 ("Regulations") § 2402(c)(1)

10   ("Commitment Offense").  The Board expressed this ground in its oral decision as

11   follows:

12          [T]he offense really was carried out in an extremely callous manner
13          and it was carried out actually in a very calculated manner because
14          after the argument you went home an got a gun and returned.  And the
15          crime could have been prevented.  The offense was carried out in a
16          manner that showed a total disregard for human suffering in that
17          instead of trying to seek help after shooting the victim you left and
18          didn't turn yourself in for a couple of days.  The motive for the crime
19          was very trivial in relation to the offense.  This had all to do about
20          ego and anger and immaturity and being able to handle a situation.
21
22   Pet. Ex. 1 at 51-52.

23           In <u>In re Lawrence</u>, the California Supreme Court explained that, although

24   Board decisions are entitled to deference, "a particularly egregious commitment

1   offense" does not categorically justify a parole denial in the absence of an

2   adequate finding of current dangerousness.  190 P.3d at 539.

3    [A]lthough the Board . . . may rely upon the aggravated circumstances
4    of the commitment offense as a basis for a decision denying parole,
5    the aggravated nature of the crime does not in and of itself provide
6    some evidence of *current* dangerousness to the public unless the
7    record also establishes that something in the prisoner's pre- or
8    post-incarceration history, or his or her current demeanor and mental
9    state, indicates that the implications regarding the prisoner's
10   dangerousness that derive from his or her commission of the
11   commitment offense remain probative to the statutory determination
12   of a continuing threat to public safety.

14  <u>Id.</u> at 555.

15   It was not a reasonable application of the "some evidence" standard when

16  the Superior Court concluded that the nature of Dean's commitment offense

17  provided support for denial of parole.  For the denial to be supported by "some

18  evidence," the other factors considered by the Board must indicate that the nature

19  of the crime was still probative of a current threat to public safety.  <u>See</u> <u>In re</u>

20  <u>Shaputis,</u> 190 P.3d at 580-81.

21   The Board did not link the callous and calculated nature of Dean's attack on

22  the victim to current dangerousness through connecting it to other factors.  At the

23  time of the hearing, eighteen years had passed since the commitment offense.  The

24  Board noted that Dean had kept a clean disciplinary record for the seven years

10

1    leading up to the hearing, as his "last major write-up was in December of '97."

2    Pet Ex.1 at 41.  The Board observed to Dean, however: "In looking at your gains,

3    this Panel does consider them recent since you've just been disciplinary-free since

4    1997."  Id. at 54.  This abbreviated judgment regarding Dean's institutional

5    conduct was inadequate to forge a link demonstrating that the nature of his offense

6    continued to be probative.  The Board did not provide any explanation why a

7    discipline-free record for the last seven out of seventeen years served provided

8    some evidence that upon release Dean may demonstrate the callous violence

9    exhibited in the commitment offense seventeen years prior.

10          Further, the Board did not relate the nature of the crime to non-disciplinary

11   factors to show that this historical fact continued to be probative.  For instance, the

12   Board did not identify insufficient programming in the area of controlling anger or

13   assaultive behavior.  The Board also does not highlight anything in the

14   psychological reports indicating that Dean has continuing violent tendencies.  The

15   Board appeared to accept the 2004 psychological evaluator's assessment that, if

16   Dean avoided alcohol and drug use, he posed a low level of current

17   dangerousness, significantly lower than other inmates of the same facility.  Id. at

18   32-33.  The Board did not point to an insufficient commitment to substance abuse

19   counseling, which, if it existed, might have provided an adequate link, as Dean's

11

1    commitment offense was performed under the influence of alcohol.  Although the

2    psychological reports note that a return to substance abuse could be a "trigger" for

3    Dean, id. at 32-33, the Board observed that Dean had a "sustained involvement" in

4    AA since 1998 and appeared to accept his plans to continue AA and NA

5    participation if he were released, id. at 27; 40.

6         A careful review of the Board hearing record and the Superior Court

7    opinion fails to unearth "some evidence" that could support a finding of parole

8    unsuitability based on the *continuing* probative nature of Dean's commitment

9    offense.  See In re Lawrence, 190 P.3d at 555. The Superior Court decision

10   unreasonably applied California's "some evidence" of current dangerousness

11   standard to the extent it affirmed denial of parole to Dean based on the callous

12   nature of his commitment offense.  See Hayward, 603 F.3d at 561.

13   **B.    Criminal history and pattern of assaultive conduct**

14        The second finding the Superior Court highlighted was that "Petitioner has a

15   record of criminality including juvenile camp, juvenile probation, county jail and

16   adult probation."  Pet. Ex. 6 at 1.  The Board observed Dean had a "record of

17   assaultive behavior" and an "escalating pattern of criminal conduct."  Id. at 52-53;

18   see Regulations § 2402(b)("Information Considered") & (c)(2) ("Previous Record

19   of Violence").  The Board found Dean had " failed to profit from society's

12

1    previous attempts to correct [his] criminality including juvenile camp, juvenile

2    probation, county jail and adult probation." Pet. Ex. 1 at 52-53.  The Board noted

3    that Dean committed a burglary offense at 16, for which he was placed on

4    probation through juvenile hall.  Id. at 17.  He then committed another burglary

5    and spent four months in juvenile hall.  Id.  As an adult Dean was convicted for

6    assaulting someone by striking him with a Walkman, was detained in county jail

7    and served adult probation.  Id. at 45-46.

8         In In re Roderick, the court cautioned that while the Board could justify an

9    initial finding of unsuitability solely on the gravity of the offense and conduct,

10   violent or non-violent, prior to imprisonment, such immutable factors should be

11   given less weight "over time as a predictor of future dangerousness."  154 Cal.

12   App. 4th at 276.  The Board's consideration of Dean's criminal history appears to

13   be squarely targeted by In re Roderick's caution.  Dean had been incarcerated

14   since 1987, so his criminal history was at least seventeen years old as of his sixth

15   parole hearing in 2004.  The Board characterized the history as demonstrating "an

16   escalating pattern of criminal conduct."  Pet. Ex. 1 at 52.  Dean's record of two

17   burglaries as a juvenile and one assault as an adult demonstrate a history of

18   criminal behavior, but do not support a picture of an "escalating pattern of

19   criminal conduct" such that In re Roderick's caution about decreasing probative

13

1  value would be rendered inapposite.

2       The Board reviewed Dean's conduct while incarcerated.  See Regulations

3  § 2402(c)6)("Institutional Behavior").  A poor history of institutional conduct

4  might also support bypassing In re Roderick's caution.  The Board's review does

5  not suggest that conclusion, however.  The Board observed that Dean had been

6  free of disciplinary infractions since 1997.  Id. at 41.  The Board noted Dean

7  received eight disciplinary reports between 1988 and 1997.  Id. at 23.  Two

8  involved fights and one involved extortion with threats.  Id.  The Board also

9  discussed Dean's previous association with a prison gang.  Id. at 23-36.  The

10  Board noted that Dean had been transferred following a gang-related riot, although

11  Dean had no personal involvement in the riot.  Id. at 24-25.  Dean stated that he

12  had no more involvement with the gang, and that, while he was younger, he had

13  made "bad choices," but had grown up, and realized that nothing positive was

14  offered by the gang activities.  Id. at 26.  He pointed to his programming as why

15  the Board should believe that he had no connection with the gang anymore.  Id. at

16  25.  The Board noted that the most recent chrono related to gang activity was in

17  2001, showing that Dean still had a gang jacket.  Id. at 26.

18       The Board failed to show how Dean's institutional conduct demonstrated

19  that his pre-incarceration criminal history should be given significant weight

14

1    regarding his current dangerousness.  Although the Board considered Dean

2    remaining discipline-free since 1997 a "recent gain," it did not explain that

3    assessment, or provide other explanation that would support using it to buttress

4    reliance on Dean's pre-incarceration history of three offenses as "some evidence"

5    of current dangerousness.  The Board also recognized that Dean had engaged in

6    extensive programming that targeted avoiding criminal behavior and controlling

7    the factors, especially substance abuse, that had contributed to his pre-

8    incarceration criminal behavior, both as a juvenile and as an adult.  Id. at 26-27.

9    In its decision, the Board did not appear to rely on Dean's prior prison gang

10   involvement: "You had some difficulties, but since '97 you have been

11   disciplinary-free and we do know that your transfer to Solano was to get you away

12   from San Quentin and the gang involvement that you had, and there's no

13   indication that you continued that while you have been here."  Id. at 53.

14        The Board failed to show how the "immutable factor" of Dean's criminal

15   history prior to incarceration provided "some dangerousness" of Dean's current

16   dangerousness, as, under In re Roderick's guidance, the inference that any prior

17   pattern of criminal conduct outside detention predicts such conduct in the future

18   becomes weaker as the years pass.  154 Cal. App. 4th at 276.  The Superior Court

19   decision unreasonably applied the "some evidence" of current dangerousness

15

1    standard as far as it based acceptance of the Board's decision on Dean's history of

2    criminal conduct from seventeen years earlier and did not accord such history

3    decreasing probative value as instructed by In re Roderick.

4        **C.    History of Substance Abuse**

5          In its decision the Board noted that Dean had a long history of alcohol abuse

6    and had experimented with drugs, although it did not appear to use this as a

7    distinct basis for finding Dean unsuitable for parole.  The Superior Court,

8    however, highlights these observations as part of the Board's findings.  Dean has

9    an acknowledged history of alcohol abuse, and started drinking when he was 12.

10    Id. at 17-18.

11          The 2004 psychological report stated that there was a "high reasonability

12    that the [commitment offense] was related to substance abuse and immaturity and

13    underdeveloped personality."  Id. at 32-33. The 2000 and 2004 psychological

14    reports both diagnose Dean as showing "Alcohol Abuse in Remission," id. at 32-

15    33, and observe that substance abuse could be a trigger for Dean for renewed

16    criminal conduct, id.. Dean agreed with this assessment.  In response to the Board

17    observing that a caveat the psychological reports repeated was that Dean's ability

18    to stay away from drugs and alcohol would be key to his staying out of trouble

19    with the law, Dean agreed.  Id. at 45.

16

1    A careful review shows, however, that the Board did not demonstrate that

2    Dean's substance abuse issues provided "some evidence" of Dean's current

3    dangerousness supporting rejection of parole.  The Board acknowledged that Dean

4    had undertaken significant self-help programming to learn to control his substance

5    abuse, and noted his "sustained involvement" in AA since 1998.  Id. at 27.  The

6    Board questioned Dean about his plans to continue the AA and NA participation if

7    released, and appeared satisfied with his response.  Id. at 40.  The Board did not

8    show that Dean continued to seek opportunities to abuse substances while

9    incarcerated, and Dean stated that he had never used alcohol or drugs in prison.

10   Id. at 41-42.  When then questioned about a disciplinary report in 1993 for

11   possession of suspected marijuana, Dean stated that the possession was due to him

12   transporting it, not keeping it for personal use.  Id.

13        Reading into the Board's decision a generic inference that someone who has

14   latent substance abuse issues that have contributed to criminal conduct in the past

15   will not be able to avoid abusing substances if released, no matter what treatment

16   has been undertaken, would not provide the individualized consideration of

17   Dean's circumstances that is required of the Board.  See In re Rosenkrantz, 59

18   P.3d 174, 223 (Cal. 2002).  The Superior Court decision unreasonably applied the

19   "some evidence" of current dangerousness standard to the extent it relied on

1  Dean's history of substance abuse to accept the Board's rejection of parole

2  suitability.

3       **D.     Inadequate vocational programming**

4       The Superior Court listed the Board's final finding as "Petitioner has failed

5  to continue in a vocation to enhance his skills." <u>See</u> Regulations § 2402(c)(8)

6  ("Understanding and Plans for the Future").  At the hearing, the Board noted that

7  Dean had been involved in the following areas of vocational education

8  programming: "voc ed" orientation; auto body; shop safety; introduction to

9  computers; electronic calculators; radiological; and office services.  Pet. Ex. 1 at

10  26-27; 54.  The Board commented that there were several positive chronos for

11  Dean's participation in auto body and in silk screening.  <u>Id.</u> at 26-27.  Dean earned

12  a certification in silk screening, and the Board noted that was his only certification

13  received.  <u>Id.</u> at 54.  When questioned about his participation in auto body and

14  why he had not completed the certification requirements, Dean noted that he was

15  injured in the program in 1992 when there was an explosion, and that the program

16  was temporarily suspended.  <u>Id.</u> at 30.

17       The Board did not provide some evidence to support a finding of current

18  dangerousness based on Dean's level of vocational education programming while

19  incarcerated.  The primary connection of vocational education achievement to

18

1    dangerousness is that an inmate who has few marketable skills may upon release

2    be more likely to fall back into criminal activities than an inmate who has job

3    opportunities.  However, in order to provide the individualized consideration

4    required, the Board may not automatically conclude that an inmate is not ready for

5    parole because he has received only one official vocational education certification.

6         In Dean's case, the conclusion that Dean was not ready for parole does not

7    follow from his sole receipt of a silk screening certification, as is evident from

8    information reviewed by the Board.  Dean's work experience while incarcerated

9    supports the inference that he will perform successfully in a job.  The Board noted

10   that Dean got above average to satisfactory ratings in his work assignments as

11   DMS clerk, other various clerking jobs, and dental assistant.  Id. at 31.  Dean was

12   not currently working at the time of the hearing because he had recently been

13   transferred to the facility and, according to Dean, due to overcrowding, it took a

14   year to a year and a half to receive an assignment.  Id. at 29.  Dean also had

15   experience prior to incarceration working in auto body; when questioned about

16   whether he had enough skills to be able to work in auto body "on the streets,"

17   Dean said he did, because his family had owned an auto body business.  Id. at 31.

18   The Board responded, "so you have some practical experience? . . . as well as

19   some [] training? . . . I understand."  Id.  Dean had an education level that would

1    permit him to perform a number of jobs, as he had a high school diploma and

2    additionally earned a GED while incarcerated. Id. at 6.  Finally, as part of Dean's

3    parole plans, the Board reviewed two potential employment avenues Dean was

4    developing.  Dean had an interview offer from a warehouse manager, confirmed in

5    a letter reviewed by the Board. Id. at 37; 40.  This option would not require

6    additional vocational education.  Dean was also investigating whether he could

7    drive trucks, and he and his wife had been in contact with a trucking school. Id. at

8    39-40. Driving trucks would require training, but not training that could be

9    accomplished during incarceration.

10        A stock recitation of the need for more programming does not create a

11    sufficient nexus to establish current dangerousness.  . See In re Lawrence, 190

12    P.3d at 552; In re Roderick, 154 Cal. App. 4th at 273-74.  The Board did not offer

13    some evidence to support a finding of current dangerousness based on Dean's

14    level of vocational education.  When so little evidence is required, the Board must

15    offer something.  It was an unreasonable application of the "some evidence"

16    standard as far as the Superior Court relied on the Board's findings related to

17    vocational education to affirm the Board's denial of parole.

18        **E.**    **Whether the Board would have reached the same conclusion**

19        In In re Roderick, the court explained that when some of the factors relied

1   upon by the Board are not supported by "some evidence" as to dangerousness, the

2   court must determine "whether the Board would [still] have denied parole based

3   [solely] upon the . . . factors" that are supported by "some evidence." 154 Cal.

4   App. 4th at 276. None of the parole factors relied upon by the Board or identified

5   by the Superior Court provided "some evidence" of Dean's current dangerousness.

6   The remaining parole unsuitability factors listed by the Regulations also do not

7   meet the "some evidence" requirement. Nor do they support a finding that the

8   Board would have reached the same conclusion by consideration of these factors.

9   The Board also recognized that Dean had a stable social history and good family

10  support. Pet. Ex. 1 at 34-36; 53-54. The factor of sadistic sexual offenses is

11  inapplicable. The Board recognized that the psychological reports showed that

12  Dean does not suffer from a mental disorder or history of mental health problems.

13  Indeed, the 2004 reported stated, with the caveat that Dean avoid alcohol and

14  drugs, Dean's "risk of dangerousness [was] low, significantly lower than the

15  average inmate at CSP, Solano." Id. at 33. Finally, Dean's institutional behavior

16  as of the sixth parole hearing reflected no disciplinary reports for the prior seven

17  years of seventeen years served, and the Board appeared satisfied that Dean had no

18  ongoing association with a prison gang. Id. at 41; 53.

19          The Superior Court observed that the Board "was concerned that Petitioner

1   had not demonstrated an ability to maintain gains over an extended period of

2   time." Pet. Ex. 5 at 1.  However, this generalized hesitation did not provide some

3   evidence of Dean's current dangerousness, and moreover is belied by the record

4   reviewed by the Board and the Board's comments.  The Board noted that the 2000

5   psychological report said Dean had "increased responsibility and improved work

6   habits during [his] 13 years of incarceration." Pet. Ex. 1 at 32.  The Board

7   observed that Dean had "sustained involvement and chronos acknowledging–in

8   AA starting from around October '98, continuing through April of '04." Id. at 27.

9   When reviewing the letter of support from the pastor, the Board commented, "I

10  appreciate the fact that you've been in touch with the pastor for the last three years

11  which really shows a commitment on your part." Id. at 40.  At the hearing, Dean

12  acknowledged responsibility for the crime, expressed regret, and stated that he

13  understood that violence "wasn't the answer" about three years into his

14  incarceration.  13-17.  The Board did not express skepticism that Dean had

15  maintained that change of heart for the fourteen years leading to the hearing.

16       The factors remaining beyond those directly mentioned by the Board and

17  Superior Court did not provide "some evidence" of Dean's current dangerousness,

18  and neither did the Board's expression of general hesitation.  Based upon a review

19  of the record, once the factors considered by the Board—which do not meet the

22

1   "some evidence" standard—are removed, nothing remains to support denial of

2   parole on other grounds.

3                                **CONCLUSION**

4           The California Superior Court's decision was an unreasonable application

5   of the "some evidence" of current dangerousness standard to the Board's decision

6   to deny parole.  The facts relied on by the Board do not amount to "some

7   evidence" that Dean poses an unreasonable risk of danger to the public.

8           Accordingly, it is ordered that:

9           1.      The petition for writ of habeas corpus is GRANTED;

10          2.      Within sixty (60) days of service of this order, the California Board of

11   Parole Hearings must convene a new parole hearing for Dean and determine his

12   eligibility for parole based on the Court's determinations set forth in this Order;

13   and

14          3.      The Clerk of the Court is DIRECTED to enter judgment in favor of

15   Dean.

16   Dated: October 4 , 2010                      *M Margaret McKeown*

17                                                HON. M. MARGARET McKEOWN

18                                                UNITED STATES CIRCUIT JUDGE

19                                                Sitting by Designation

20

                                        23